IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MICHAEL LEE CONN                                                       PLAINTIFF

v.                                    Civil No. 5:20-CV-05008

SHERIFF TIM HELDER and                                        DEFENDANTS
MAJOR RANDELL DENZER

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 17).

**I. BACKGROUND**

Plaintiff is currently incarcerated in the Arkansas Division of Correction[1] Varner Unit, but his claims center on his time in the Washington County Detention Center ("WCDC"). Plaintiff filed his Complaint on January 7, 2020. (ECF No. 1). He filed a Motion to Amend on January 14, 2020, which was granted the next day. (ECF Nos. 8, 9). Plaintiff filed his Amended Complaint on January 22, 2020. (ECF No. 10). For his first claim, Plaintiff alleges that from September 4, 2019, through December 29, 2020, Defendants subjected him to unsafe and unsanitary living conditions in WCDC. Specifically, he alleges that toilet leaks and broken sinks were not repaired, there was no cold drinking water, and the ventilation systems were broken. (*Id*. at 4-5). Later in

---

[1] The Arkansas Department of Correction was reorganized in 2019 to become the Arkansas Department of Corrections. The new Department is a Cabinet level department within the Arkansas State Government which includes the Division of Correction and the Division of Community Correction.

his Complaint he alleges that he was "forced to live with no cold drinking water, forced to walk in human urine and waste and sleep in water from sweating walls due to no working ventilation systems during certain time and to use toilets that back flow and hold human waste." (*Id*. at 8). For his second claim, Plaintiff alleges that WCDC was overcrowded from September 4, 2019, through the date he filed his Complaint. (*Id*. at 6). This overcrowding forced him and other inmates to sleep on the floor. (*Id*.).

Plaintiff proceeds against Defendants for all claims in both their official and individual capacities. (*Id*. at 5, 6). He seeks compensatory and punitive damages. (*Id*. at 8).

Defendants filed their Motion for Summary Judgment on October 7, 2020. (ECF No. 17). On October 8, 2020, the Court entered an Order directing Plaintiff to file his Summary Judgment Response. (ECF No. 20). Plaintiff filed a Motion for Extension on October 16, 2020, which was granted on October 20, 2020. (ECF Nos. 21, 22). Plaintiff filed his Response on November 12, 2020. (ECF Nos. 23, 24).

## II.  LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient

evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. ANALYSIS

Defendants argue that summary judgment in their favor is appropriate because: (1) Plaintiff failed to file any grievances concerning black mold,[2] that he was forced to sleep on the floor for months, or that he was forced to sleep in water; (2) there is no proof of personal involvement by either of the named Defendants; (3) Defendants did not subject Plaintiff to any unconstitutional conditions of confinement; (4) negligence does not rise to the level of a constitutional violation; (5) Defendants are entitled to qualified immunity; and, (6) there is no basis for official capacity/county liability. (ECF No. 18).

In his Response, Plaintiff argues that he exhausted all grievance procedures on the kiosk grievance system to the best of his abilities, and references the copies of his grievances submitted by Defendants with their motion. (ECF No. 23 at 2). Plaintiff then points to the large number of maintenance tickets for his cell block, F-Block in B-Pod. (*Id*. at 3). He further argues that the contents of the logs and maintenance tickets confirm his complaints about the existence of the maintenance issues. (*Id*. at 4-17). Plaintiff then argues that the maintenance issues violated the written policies of the facility. (*Id*. at 10-13). Plaintiff does not dispute that the allegations of his

---

[2] It does not appear that Plaintiff made any allegations concerning black mold in his Amended Complaint. Black mold will, therefore, not be discussed further.

Complaint center on his time in F-Block, that he was transferred to F-Block on September 21, 2019, or that he was transferred out of F-Block on January 9, 2020. (ECF No. 19 at 1 ¶ 3; ECF No. 24 at 1 ¶ 3). He does not dispute that the total amount of time he spent in F-Block was three or four months. (ECF No. 19 at 7 ¶ 38; ECF No. 24 at 6 ¶ 38).

### A. Failure to File Grievances

A review of Plaintiff's WCDC grievances indicates he filed no grievances concerning his sleeping conditions. (ECF No. 19-3). The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a). Here, Plaintiff failed to file any grievances concerning claims that he was forced to sleep on the floor for long periods due to overcrowding, or that he was forced to sleep in wet conditions. As he failed to exhaust any grievances on these issues prior to filing this case, his claims on these issues must be dismissed pursuant to the PLRA.

### B. Lack of Personal Involvement

Plaintiff did file grievances concerning the functioning of the toilets, sinks, and ventilation system in F-Block. (ECF No. 19-3). Based on the summary judgment record, however, it appears that he sued the named Defendants because they held supervisory roles at WCDC.

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services*, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is

4

insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)); s*ee also Kulow v. Nix*, 28 F.3d 855, 859 (8th Cir. 1994) ("if any claim of medical indifference . . . is to succeed, it must be brought against the individual directly responsible for [Plaintiff's] medical care.").

In his deposition, Plaintiff testified that he never spoke with Sheriff Helder concerning the conditions of confinement in the facility, and, in fact had never met him. (ECF No. 19-10 at 47-48). He testified that "with him being the sheriff of the place . . . you know, being in charge of the operations, I would just think they would have knowledge of what was going on . . ." (*Id*. at 48). Plaintiff further testified that he had no evidence that the sheriff was aware of his complaints. (*Id*. at 49). Regarding Major Denzer, he believed Denzer had been in F-block twice. (*Id*. at 50). One of those times was in late November or early December, and Plaintiff believed Denzer came to verify that the sinks were not working. (*Id*. at 52). The buttons on the sinks were replaced after that visit, and the sinks became fully operational sometime between mid-December and the first week of January. Plaintiff was informed by the maintenance person, Sam Caudle, that they had to order and wait for parts. (*Id*. at 35, 52). Plaintiff testified that Denzer was there a second time with a group of other "bigwigs" while they were trying to fix the sinks, he believed sometime in mid-December though the first week of January; it was shortly before he signed his plea agreement and was transferred to the ADC in January. (*Id*. at 35, 48, 50). Plaintiff believed this group of people included news people who were videoing the conditions in the facility. (*Id*. at 51). Plaintiff testified that inmates typically did not see anyone of higher rank than a sergeant in the cell blocks,

but majors, captains, and lieutenants all came with the news people on that day. Plaintiff did not speak with Major Denzer concerning his complaints, and to his knowledge, Denzer had never seen his grievances. (*Id*. at 50-51). Plaintiff testified that he sued Major Denzer because "he's the major, so he's in charge of the operations at the jail and he's been in and out of there enough to see that people are overcrowded and sleeping on floors and pretty much just stacked on top of each other. . ." (*Id*. at 64). He testified that all repairs were done though a "chain of command." (*Id*. at 53). The best way to get a repair completed was to file a grievance, because requests to floor deputies were frequently not successful. (*Id*.) Then Corporal Mulvaney would respond to the grievances. (*Id*. at 53-54). Typically, the grievance would result in someone coming to look at the issue within a week or two; the response was generally not immediate. (*Id*. at 54-55). A repair issue was more likely to be addressed if multiple inmates filed grievances. (*Id*. at 55). He was not certain of the process after Corporal Mulvaney addressed the grievance. (*Id*. at 54).

In his affidavit, Sheriff Helder stated that he relied on a chain of command to supervise the employees of the sheriff's department. He is not personally involved in the maintenance and upkeep of the facility unless a problem is systemic or not capable of resolution by his staff. (ECF No. 19-11 at 1). He was neither aware of nor involved in the maintenance issues or housing issues referenced in Plaintiff's Complaint until he was served with the lawsuit. (*Id*. at 2). While he was generally aware of over-population in the jail during late 2019 and early 2020, he was not familiar with either Plaintiff or his claims. (*Id*.).

Major Denzer, in his affidavit, stated that he is the highest-ranking officer under the Sheriff and Chief deputy, and as such, relied upon a chain of command to administer the various operations of WCDC. (ECF No. 19-12 at 1). Problems are handled by those below him in the chain of command. Issues are not brought to his attention unless they cannot be solved by those employees who normally handle the issue. (*Id*.). He was not personally involved with the maintenance issues

6

referenced in Plaintiff complaint until he was served with the lawsuit. (*Id*.). Because Plaintiff's allegations deal with plumbing and air issues, such issues would have been a routine part of the operation of the facility and would not have been brought to his attention. (*Id*. at 2). Due to the age and constant use of the facility, WCDC employs maintenance personnel capable of addressing normal issues. (*Id*.). He does not review the maintenance log unless he is made aware of a problem that creates a danger to detainees or staff. (*Id*.). While he was generally aware of over-population in the jail during late 2019 and early 2020, he was not familiar with either Plaintiff or his claims. (*Id*.).

In his affidavit, Sam Caudle, WCDC maintenance employee, handled the issues concerning the toilets and sinks in F-Block. (ECF No. 19-13 at 1). He acknowledged that there have been instances where the walls and floors "sweat," but this is not caused by a failure of the ventilation system. Instead, it occurs when the walls or floors are cooler than the air in the room, causing condensation. (*Id*.). This situation is temporary, and towels and blankets are used to absorb the condensation. (*Id*.). He has never ignored a repair ticket when it comes to his attention, and does everything possible to ensure that repairs are done in a timely manner. (*Id*.). He did not consult with either Sheriff Helder or Major Denzer concerning any of the repair issues noted in Plaintiff's Complaint. (*Id*.).

Thus, based on the summary judgment record, neither of the named Defendants were personally aware of or involved in Plaintiff's allegations of maintenance issues concerning the sinks, toilets, and ventilation systems.

### C. No Unconstitutional Conditions of Confinement

To the extent Plaintiff's allegation that Major Denzer examined the sinks in F-Block to confirm a repair issue could be construed as a form of limited personal involvement, nothing

7

alleged by Plaintiff concerning the malfunctioning sinks rises to the level of a constitutional violation.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) (citation omitted). The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. Detention centers must provide pretrial detainees with "reasonably adequate sanitation, personal hygiene, and laundry privileges . . ." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (quoting *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)). The Eighth Amendment also prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities. *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton*, 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same.").

As with all Eighth Amendment claims, a prisoner must suffer some actual injury to receive compensation, and the injury must be greater than *de minimis*. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Plaintiff's allegation that cold drinking water was not always available in F-Block due to repair issues with the sinks does not rise to the level of a constitutional claim. Access to a sufficient quality and quantity of water for drinking and basic personal hygiene is, of course, a minimal life necessity. *See e.g., Scott v. Carpenter*, 24 F. App'x 645, 647 (8th Cir. 2001) (unpublished) (no disagreement that basic personal hygiene falls within the minimal civilized measure of life's necessities); *Spires v. Paul*, 581 F. App'x 786, 792-94 (11th Cir. 2014) (housing an inmate in a cell without potable water for several days and forcing him to drink from the toilet to survive stated an Eighth Amendment violation). But "[n]othing in the Constitution requires that each prisoner

8

be provided with clean, cold, warm, or any other form of running water in his cell . . ." *Jelinek v. Roth*, 33 F.3d 56, *2 (7th Cir. 1994) (unpublished) (plumbing in cell that produced only water contaminated with rust that was undrinkable and unsuitable for bathing does not implicate the Eighth Amendment); *see also, Smith v. Copeland*, 892 F.Supp. 1218, 1230 (E.D. Mo. 1995) (turning off water in a cell except for brief periods to flush the toilet, and providing drinking water with each meal did "not deprive plaintiff of minimally necessary drinking water or hygienic requirements"), *aff'd*, 87 F.3d 265 (8th Cir. 1996); *Narducci v. Fields*, 62 F.3d 1428 (10th Cir. 1995) (unpublished) ("a lack of light, a lack of running water, poor cell ventilation, and placement in an individual cage for outdoor exercise" did not rise to level of constitutional violation); *Downs v. Carter*, 2016 WL 1660491, *8 (N.D. Illinois) ("There is no constitutional right to water on demand.").

Plaintiff does not allege he was denied sufficient water to drink or that he was denied the opportunity for basic personal hygiene. Instead, he alleges only that cold drinking water was not always available in F-Block. Plaintiff clarified the situation in his deposition, stating that there were four sinks in the pod. One sink worked normally, two were nonfunctional, and one ran constantly with lukewarm water. (ECF No. 19-10 at 34). After one repair attempt, all four sinks were nonfunctional for two to four days. (*Id*. at 34, 39). During those days, Plaintiff was provided with Kool-Aid with his meals. (*Id*. at 36). The showers were always functional. (*Id*. at 36-37). Plaintiff further testified that he suffered no injury due to any issue with the sinks. (*Id*. at 36). Thus, Plaintiff's allegation that he was denied cold drinking water on demand in his pod for a few days does not rise to the level of a constitutional violation.

### D.  Official Capacity Claims

Finally, Plaintiff asserts an official capacity claim against both Defendants. An official capacity claim is considered a claim against the employing governmental entity, here, Washington

County. *Crawford v. Van Buren Cnty.*, 678 F.3d 666, 669 (8th Cir. 2012). "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Corwin v. City of Independence, Mo.,* 829 F.3d 695, 699 (8th Cir. 2016) (citations omitted).

Plaintiff does not contend any of the WCDC policies were unconstitutional. Instead, in his Summary Judgment Response and in his deposition, he states that Defendants violated WCDC policies concerning inmate living conditions. (ECF No. 19-10 at 56; ECF No. 23 at 10-13). A violation of policy allegation cannot support an official capacity claim. *See Monell v. Department of Soc. Srvs.*, 436 U.S. 659, 690-91 (1978) (violation must result from the governmental entity's custom or policy).

### IV. CONCLUSION

Accordingly, it is recommended that Defendants' Motion for Summary Judgment (ECF No. 17) be GRANTED, and Plaintiff's Complaint be DISMISSED WITH PREJUDICE.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 3rd day of May 2021.

/s/ Mark E. Ford
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE